UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA and MOODY COUNTY, SOUTH DAKOTA | ) ) ) | Civ. No. 04-4073-KES 2005 DSD 22 |
| Plaintiffs, | ) ) | MEMORANDUM OPINION AND ORDER DENYING |
| vs. | ) ) | PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| UNITED STATES DEPARTMENT OF INTERIOR; DAVID W. ANDERSON, Assistant Secretary-Indian Affairs; and REGIONAL DIRECTOR, Great Plains Regional Office, BIA; | ) ) ) ) ) ) | AND GRANTING SUMMARY JUDGMENT TO DEFENDANTS |
| Defendants. | ) ) | |

Plaintiffs filed this action challenging the Department of Interior's decision to take land into trust for the Flandreau Santee Sioux Tribe (FSST). Plaintiffs move for summary judgment. Defendants oppose the motion.

**BACKGROUND**

On December 21, 2000, FSST purchased 310 acres of land that is contiguous to its current reservation. AR 31.[1] Shortly thereafter, FSST submitted an application to the Bureau of Indian Affairs (BIA) requesting that the United States take the land in trust for the benefit of FSST pursuant to § 5 of the Indian Reorganization Act (IRA). AR 31. In its application, FSST stated that it needed the additional land to compensate for its increase in tribal

---

[1] Throughout this order, the court will refer to documents included in the administrative record by citing "AR" and the appropriate tab number.

membership.  At the time of the application, FSST had a reservation comprised of approximately 2100 acres of trust land, all of which was located in Moody County, South Dakota.  FSST's membership was 695 members, approximately 225 of whom were adult members living in Moody County.  FSST further stated that its membership had increased by 155 members between 1990 and 2000.  Additionally, FSST stated that the number of tribal members returning to the reservation had doubled between 1990 and 2000, in large part due to the employment opportunities provided by FSST's successful gaming operation.

The application was assigned to the Regional Director (Director) of the BIA for review.  As part of her review process, the Director sought comments from both the State of South Dakota (the State) and Moody County (the County) regarding FSST's application.  The Director specifically sought information about the zoning of the land and the impact of removing the land from the tax rolls.  AR 33, 34.  Both the State and the County responded in writing, raising several objections to the trust acquisition.  AR 39, 40.  The Director then sought and obtained responses to these objections from FSST.  AR 48.  On May 3, 2001, the Director issued a decision letter granting the FSST's application to hold the land in trust.  AR 52.

The State and the County both filed appeals with the Interior Board of Indian Appeals (IBIA), but, before the appeal was heard, the IBIA granted the

2

Director's request to remand the matter because the Director erroneously failed to provide notice and obtain comments from the City of Flandreau (the City), the Flandreau Township (the Township), and the Flandreau Public School District (the School District).  AR 59.  The Director provided notice and solicited comments from the City and the Township on September 10, 2001.  AR 60, 61.  The administrative record does not contain a response from either the City or the Township.

The Director also provided notice and sought comment from the School District on November 5, 2001.  AR 62.  The School District responded in writing on November 21, 2001; however, the response was apparently mishandled and the Director did not discover the response until June of 2002.  AR 20, 23.

On March 15, 2002, after noting that she had received no comments from the City, the Township, or the School District, the Director issued a second decision letter granting FSST's application.  AR 21.  In this decision letter, the Director responded to the arguments raised by the State and the County on the first appeal to IBIA.

Once again, the State and the County filed notices of appeal to the IBIA.  While this appeal was pending, the Director again sought remand because she had found the misplaced response by the School District.  AR 59.  The IBIA

3

denied remand but stayed the proceedings to enable the Director to review the School District's comments.  Id.

After reviewing the School District's comments, the Director issued a third decisional letter on October 16, 2002, which again granted the FSST's application to hold the land in trust.  AR 19.  The Director stated that the School District did not provide any new comments, and thus, she relied on the substance of her March 15, 2002, decisional letter granting the application.

Following the Director's consideration of the School District's comments, the IBIA considered the merits of the State's and the County's appeals.  On May 20, 2004, the IBIA affirmed the Director's decision to grant the application.  South Dakota v. Acting Great Plains Reg'l Dir., 39 IBIA 283 (2004).

The State and the County (collectively referred to as plaintiffs) filed this action seeking a declaratory judgment that the Director's decision granting the application was erroneous and an injunction preventing the Department of Interior from acquiring the land in trust for FSST.  Plaintiffs' motion for summary judgment is before the court.

4

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## DISCUSSION

The Director, acting on behalf of the Department of Interior, exercised her discretion and took the land in trust for the benefit of the FSST pursuant to § 5 of the IRA, which states in pertinent part:

> The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.
>
> * * *
>
> Title to any lands or rights acquired pursuant to this Act . . . shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.

5

28 U.S.C. § 465.  Plaintiffs contend that the trust acquisition is wrongful because: (I) section 5 of the IRA is an unconstitutional delegation of legislative power; and (II) the Director's decision was arbitrary and capricious, and thus, subject to reversal and remand under the Administrative Procedures Act (APA).

As a preliminary matter, the court notes that there are no genuine issues of material fact regarding these issues.  With regard to plaintiffs' unconstitutional delegation argument, the court looks solely to the language and context of the statute in determining its constitutionality.  <u>South Dakota v. U.S. Dep't of Interior</u>, 423 F.3d 790, 797 (8th Cir. 2005) (<u>South Dakota II</u>).  With regard to plaintiffs' arbitrary and capricious argument, the court's review of the Director's decision under the APA is limited to a review of the administrative record.  Accordingly, there are no genuine issues of material fact and these issues are suitable for disposition through summary judgment.

I.      **Unconstitutional Delegation of Legislative Power**

Article I, Section 1 of the U.S. Constitution states: "All legislative Powers herein granted shall be vested in a Congress of the United States . . . ." This limits Congress's ability to delegate decisionmaking power to administrative agencies; however, Congress's delegation is constitutional if the legislative act contains an "'intelligible principle to which the person or body authorized to [act] is directed to conform.'"  <u>Whitman v. Am. Trucking Ass'ns</u>,

6

531 U.S. 457, 472, 121 S. Ct. 903, 912, 149 L. Ed. 2d 1 (2001).  "The Supreme Court has given Congress wide latitude in meeting the intelligible principle requirement, recognizing that 'Congress simply cannot do its job absent an ability to delegate power under broad general directives.'"  South Dakota II, 423 F.3d at 795 (quoting Mistretta v. United States, 488 U.S. 361, 372, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989)).  The legislative delegation is constitutional "'if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'"  Id. at 796 (quoting Am. Power & Light Co. v. SEC, 329 U.S. 90, 105, 67 S. Ct. 133, 91 L. Ed. 103 (1946)).

Plaintiffs contend that § 5 of the IRA constitutes an unconstitutional delegation of legislative power because it lacks a general policy and boundaries.  Recently, in South Dakota II, the Court of Appeals for the Eighth Circuit decided this very issue.  In South Dakota II, the State,[2] the City of Oacoma, and Lyman County contested the Department of Interior's decision to take land into trust pursuant to § 5 for the benefit of the Lower Brule Sioux Tribe.  Like here, the State and other plaintiffs contended that § 5 was an unconstitutional delegation of legislative power.  The Eighth Circuit "conclud[ed] that the purposes evident in the whole of the IRA and its

_____

[2] Notably, the State, a party to this case, was also a party in South Dakota II, and raised the exact same constitutional arguments as it does here. See South Dakota II, 423 F.3d at 795.

7

legislative history sufficiently narrow the delegation" to pass constitutional muster.  Id. at 797.  The Eighth Circuit found "an intelligible principle exists in the statutory phrase 'for the purpose of providing land for Indians' when it is viewed in the statutory and historical context of the IRA."  Id. at 795.

South Dakota II is factually identical and controlling.  Based thereon, this court finds that § 5 of the IRA is not an unconstitutional delegation of power, and defendants are entitled to judgment as a matter of law on this issue.[3]

## II.    Review of the Application Under the APA

Plaintiffs also contend that the Director erroneously granted FSST's application.  The court reviews agency action pursuant to the APA and will only set aside action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  A plaintiff bears the burden of proving "that the agency's action was arbitrary and capricious."  South Dakota II, 423 F.3d at 799.  Agency action is arbitrary and capricious if

_____

[3] Although defendants have not moved for summary judgment, the court "can enter summary judgment sua sponte if 'the losing party was on notice that [it] had to come forward' with its relevant evidence."  Nunley v. Dep't of Justice, 425 F.3d 1132, 1139 (8th Cir. 2005) (quoting Stone Motor Co. v. General Motors Corp., 400 F.3d 603, 607 (8th Cir. 2005)).  Here, plaintiffs presented their relevant evidence supporting their motion for summary judgment.  In evaluating this motion, the court concludes that defendants, not plaintiffs, are entitled to judgment as matter of law.   Accordingly, the court exercises its power to grant summary judgment sua sponte to defendants.

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

In re Operation of Mo. River Sys. Litig., 421 F.3d 618, 628 (8th Cir. 2005). The court grants the agency substantial deference in its interpretation of its own regulation.  South Dakota II, 423 F.3d at 799.  Additionally, the canons of statutory construction applicable to Indian law are rooted in the trust relationship between the United States and Indians and require that statutes be construed liberally in favor of the Indians and that ambiguous statutes be interpreted to the benefit of Indians.  County of Yakima v. Confederated Tribes & Band of the Yakima Indian Nation, 502 U.S. 251, 269, 112 S. Ct. 683, 116 L. Ed. 2d 687 (1992); Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 766, 105 S. Ct. 2399, 85 L. Ed. 2d 753 (1985)).

Plaintiffs argue that the Director's actions were arbitrary and capricious because: (A) The Director failed to properly apply Department of Interior regulations implementing § 5; and (B) The Director was biased against them.

**A.    The Director's Application of Department of Interior Regulations**

According to § 5, the Secretary of Interior (or her designee) has discretion to decide whether to take land in trust.  25 U.S.C. § 465.  The Department of Interior has adopted regulations delineating when the

9

Secretary should exercise her discretion.  The following pertinent factors guide

the Director's decision in this case:[4]

> (a)  The existence of statutory authority for the acquisition and any limitations contained in such authority;
>
> (b)  The need of the individual Indian or the tribe for additional land;
>
> (c)  The purposes for which the land will be used;
>
> * * *
>
> (e)  If the land to be acquired is in unrestricted fee status, the impact on the State and its political subdivisions resulting from the removal of the land from the tax rolls;
>
> (f)  Jurisdictional problems and the potential conflicts of land use which may arise; and
>
> * * *
>
> (h)  If the land to be acquired is in fee status, whether the Bureau of Indian Affairs is equipped to discharge the additional responsibilities resulting from the acquisition of the land in trust status.

28 C.F.R. § 151.10.

Plaintiffs contend that the Director's decision is arbitrary and capricious

because she erroneously interpreted and applied several of the regulatory

factors.  In reviewing an agency decision

> the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been

---

[4] Here, the land is contiguous to the FSST's current reservation, and thus, the court applies 25 C.F.R. § 151.10.

a clear error of judgment.  Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one.  The court is not empowered to substitute its judgment for that of the agency.

South Dakota v. Ubbelohde, 330 F.3d 1014, 1031 (8th Cir. 2003) (quoting

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S. Ct.

814, 28 L. Ed. 2d 136 (1971)).  "If [the Director's] determination is supportable

on any rational basis, [the court] must uphold it.'"  Voyageurs Nat'l Park Ass'n

v. Norton, 381 F.3d 759, 763 (8th Cir. 2004).  To carry their burden, plaintiffs

"must present evidence that the agency did not consider a particular factor; it

may not simply point to the end result and argue generally that it is

incorrect."  South Dakota II, 423 F.3d at 800.

### 1.    25 C.F.R. § 151.10(a).

Plaintiffs contend that FSST lacks statutory authority for the acquisition

as required under 25 C.F.R. § 151.10(a).[5]  The Director explicitly considered

§ 151.10(a) and concluded that § 5 of the IRA authorized the acquisition.[6]  AR

21.

---

[5] Plaintiffs do not frame their argument as a direct challenge to the Director's findings under 25 C.F.R. § 151.10(a), rather, they assert that § 5 of the IRA would not authorize the acquisition in this case. Implicitly, this is an attack on the Director's findings under 28 C.F.R. § 151.10(a) because she concluded that § 5 authorized the acquisition.  AR 21.

[6] Unless stated otherwise, all references to the Director's decision refer to her decision letter dated May 15, 2002, because this was the last decision letter where the Director analyzed the merits of FSST's application.  See  AR 19, 21.

Plaintiffs do not dispute that FSST is a recognized Indian tribe for which the United States government can hold land in trust pursuant to § 5.  Rather, plaintiffs contend that § 5 only permits the government to acquire land for "landless Indians."  (Docket 47-1).  Alternatively, plaintiffs contend that § 5's purpose is to benefit impoverished Indians; thus, it does not apply to this acquisition because FSST has a thriving economy driven by gaming.  Plaintiffs rely entirely on legislative history to support these interpretations of § 5.  (Docket 47-1).

The court disagrees with plaintiffs' construction and finds that § 5 authorizes the acquisition.  First, the plain language of § 5 enables the Secretary to exercise her discretion and acquire lands "for the purpose of providing land for Indians."  Absent from this statutory language is any economic criteria limiting the Secretary's discretion.  Additionally, as plaintiffs concede, the Court of Appeals for the Eighth Circuit has stated that the Department of Interior's authority under § 5 is not limited to taking land in trust for landless Indians.  South Dakota II, 423 F.3d at 798 ("Although the legislative history frequently mentions landless Indians, we do not believe that Congress intended to limit its broad stated purposes of economic advancement and additional lands for Indians to situations involving landless Indians.").  See also Chase v. McMasters, 573 F.2d 1011, 1015 (8th Cir. 1978).  Further, plaintiffs' reliance on legislative history requires a finding that § 5 is

ambiguous.  <u>United States. v. Maswai</u>, 419 F.3d 822, 824 (8th Cir. 2005).  But to the extent § 5 is ambiguous, the rules of construction applicable to Indian law require interpreting it in favor of FSST.  <u>See</u> <u>Chase</u>, 573 F.2d at 1015. Accordingly, the director properly concluded that § 5 authorized the acquisition and reached a rational decision regarding this factor.

### 2.    25 C.F.R. § 151.10(b)

Section 151.10(b) requires the Director to consider the "need of the . . . tribe for additional land."  Plaintiffs contend that § 151.10(b) requires a finding that FSST needs the land to be "held in trust," and that the Director erred as a matter of law because she only considered FSST's need to own additional land.  In <u>South Dakota II</u>, 423 F.3d at 801, the Eighth Circuit addressed this issue and held "it would be an unreasonable interpretation of 25 C.F.R. § 151.10(b) to require the Secretary to detail specifically why trust status is more beneficial than fee status in the particular circumstance." Rather, the regulations only require the Secretary to "express the Tribe's needs and conclude generally that IRA purposes were served."  <u>Id.</u>

Here, the Director determined that FSST needed additional land to compensate for additional tribal membership.  AR 21.  The Director noted that FSST's membership had increased 20 percent from 1990 to 2000; that the acquisition would enable FSST to use its current land holdings for cultural, governmental, or social needs instead of future housing requirements; and

that the income from the land would be placed in the FSST's Natural Resource Program, thereby promoting "Tribal Self-[D]etermination."  AR 21.  The Director also found that "trust acquisition will help ensure the survival of the Tribe as a sovereign nation by providing protected lands for their current and future generations."  AR 21.  These findings have factual support in the record and provide a rational basis for the Director's decision.

### 3.   28 C.F.R. § 151.10(e)

Section 151.10(e) requires consideration of the impact on State and local governments of removing the land from the tax rolls.  28 C.F.R. § 151.10(e).  Plaintiffs contend that § 151.10(e) required the Director to consider the cumulative effect of all FSST's trust land on the tax rolls, and not just the impact of removing this particular parcel. (Docket 47-1).

Plaintiffs' proposed statutory construction lacks support from either the plain language of § 151.10(e) or the Department of Interior's interpretation of the regulation.  The IBIA has stated repeatedly that § 151.10(e) does not require the Secretary to consider the cumulative impact of all trust land on the tax rolls.  E.g., Shawano County, Wis. v. Midwest Reg'l Dir., 40 IBIA 241, 249 (2005); Ziebach County v. Great Plains Reg'l Dir., 38 IBIA 227, 230 (2002).  The Department of Interior's interpretation of its own regulation is reasonable, and thus, entitled to substantial deference.  See South Dakota II,

423 F.3d at 799.  Accordingly, the Director only needed to consider the effect of removing these specific 310 acres from the tax rolls.

The record shows that the Director properly considered § 151.10(e). Specifically, the Director noted that the 2000 property taxes on the land were anticipated to be $4,119, while the total property taxes collected on land located in Moody County was $5,690,650.  AR 21.  Accordingly, the Director found that the proposed acquisition would decrease the total tax base by .00072 percent per year.  Id.  The County informed the Director that the land's 2001 assessed value would increase to $7,812, but even at this higher value, the Director found that the land constitutes less than 1 percent of the County's total revenue from property taxes.[7]  Id.  The Director also noted that FSST donates 1 percent of its net gaming revenue to local governmental projects, and that it already pays for police and fire services.  Based on the foregoing, the Director found that the resulting tax loss would have a minimal impact.

As acknowledged by the IBIA, the Director did make some erroneous findings during her § 151.10(e) analysis.  Acting Great Plains Reg'l Dir., 39 IBIA at 296-297.  For instance, she erroneously calculated the percentage of the County's road maintenance budget that was supported by property tax

_____

[7] The County had annual property tax revenue of $1,968,421.47. (Docket 40).  This represents the County's portion of the $5,690,650 in total property taxes collected on property located in Moody County.  Id.

payments from FSST's fee properties.  Additionally, the Director erroneously determined that the School District would receive additional federal funding if the land is placed in trust.  Nevertheless, on the whole, the court finds that the Director considered this factor and reached a rational decision supported by the record.  See South Dakota II, 423 F.3d at 800 ("[The court] will not try to identify failures in clarity or detail, and will reverse 'only when there is no rational basis for the policy choice.'" (citation omitted)).

### 4.    28 C.F.R. § 151.10(f)

Section 151.10(f) requires the Secretary to consider potential jurisdictional and land use problems.  "The regulations only require that the BIA undertake an evaluation of potential problems.'" South Dakota v. U.S. Dep't of Interior, 314 F. Supp. 2d 935,  945 (D.S.D. 2004) (South Dakota I) (quoting Lincoln City v. U.S. Dep't of Interior, 229 F. Supp. 2d 1109, 1124 (D. Or. 2002)).

The Director properly considered potential jurisdictional problems.  The Director specifically noted that FSST and the City previously entered into a joint powers agreement for the provision of law enforcement services on trust land. AR 21, 38.  The agreement also delineates that tribal law will apply on trust land and that state and city ordinances will apply on non-trust land.  AR 38.  The Director also noted that FSST had entered into an agreement with the City to provide fire protection for trust land.  AR 21.  These agreements

should prevent most, if not all, jurisdictional problems, and thus provide sufficient evidence to conclude that the Director reached a rational decision. See Lincoln City, 229 F. Supp. 2d at 1124-25 (finding sufficient that "the BIA found it unlikely that there would be a significant gap in law enforcement coverage that would have a negative effect on the residents of the Property.").

Despite the Director's reference to these extensive agreements, plaintiffs contend that the Director's decision relies on the speculative conclusion that the land will be incorporated into FSST's reservation.  Plaintiffs' contention fails for two reasons.  First, it misconstrues the Director's obligation under § 151.10(f), which merely requires the Director to consider potential problems. Here, FSST informed the Director that it "plans to request that these lands be proclaimed to be a part of the reservation . . . ."  AR 31.  The Director used this information, along with the other information such as the police and fire service agreements, to evaluate the potential for jurisdictional conflicts, finding that jurisdictional problems were unlikely because FSST intended to seek inclusion of land in its reservation, which if successful, would eliminate jurisdictional conflicts.  This consideration of relevant information is all that is required by § 151.10(f).  See South Dakota I, 314 F. Supp. 2d at 945.

17

Second, even if the Director erroneously presumed that the land would be incorporated as part of the reservation,[8] the error has no practical effect. Implicitly, the Director's acknowledgment that including the land as part of the reservation would solve any jurisdictional conflicts recognizes that reservation land is subject to tribal and federal jurisdiction.  The Director's ultimate finding—the land is subject to tribal and federal jurisdiction—is supported by the law because the land will be classified as "Indian country" for jurisdictional purposes, and thus is subject to tribal and federal jurisdiction.  See, e.g., Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 511, 111 S. Ct. 905, 910, 112 L. Ed. 2d 1112 (1991) (stating that trust land was "validly set apart" and thus qualifies as Indian country); United States v. Roberts, 185 F.3d 1125, 1131 (10th Cir. 1999), cert. denied, 529 U.S. 1108, 120 S. Ct. 1960, 146 L. Ed. 2d 792 (2000); United States v. Azure, 801 F.2d 336, 338 (8th Cir. 1986).

Plaintiffs, relying on United States v. Stands, 105 F.3d 1565 (8th Cir. 1997), dispute whether the land will be classified as "Indian country."  The court in Stands did state that "[f]or jurisdictional purposes, tribal trust land beyond the boundaries of a reservation is ordinarily not Indian country."  Id.

---

[8] The Secretary of the Interior is authorized to proclaim land held in trust as part of the reservation.  25 U.S.C. § 467.  The Secretary has discretion whether to include the land as part of the reservation.  See Donahue v. Butz, 363 F. Supp. 1316, 1323 (N.D. Cal. 1973).

at 1572.  This language, however, is dicta which does not overcome the wealth of legal authority establishing that trust land qualifies as "Indian country."[9] See Citizen Band of Potawatomi Indian Tribe, 498 U.S. at 511, 111 S. Ct. at 910, 112 L. Ed. 2d 1112; Roberts, 185 F.3d at 1131; Buzzard v. Okla. Tax Comm'n, 992 F.2d 1073, 1076 (10th Cir. 1993), cert. denied sub. nom. United Keetoowah Band of Cherokee Indians v. Okla. Tax Comm'n, 510 U.S. 994, 114 S. Ct. 555, 126 L. Ed. 2d 456 (1993); Azure, 801 F.2d at 338.  Accordingly, the Director's conclusion is supported by law and the court finds the Director made a rational decision.

The Director's decision also considered the potential for land use conflicts.  AR 21.  The Director found that FSST intends to continue using the land for agricultural purposes in accordance with the current zoning regulations.  AR 21.  Plaintiffs do not contest this finding, but instead contend that the Director failed to properly consider the future land use problems that may develop when, and if, FSST uses the land for residential housing.  Specifically, plaintiffs argue that the Director erred when she found that no future zoning conflicts would develop because the land will be annexed as

---

[9] The only authority cited by the court in Stands is United States v. Azure, 801 F.2d 336 (8th Cir. 1986), a case holding that trust land was "Indian country" for criminal jurisdictional purposes.  Stands, 105 F.3d at 1572 n.3 (citing Azure).  In fact, the court in Stands found that an individual allotment off the reservation was "Indian country" for purposes of federal criminal jurisdiction.

19

part of the reservation.  (Docket 47-1).  Regardless of whether the land will be proclaimed part of FSST's reservation, the Director's ultimate conclusion–that the land would not be subject to local zoning regulations–is supported by the law because state and local governments lack jurisdiction to enforce zoning regulations on trust land.  See 25 C.F.R. § 1.4(a); Santa Rosa Band of Indians v. Kings County, 532 F.2d 655, 664-65 (9th Cir. 1975); see also Carcieri v. Norton, 423 F.3d 45, 59 n.4 (1st Cir. 2005); Connecticut ex rel. Blumenthal v. U.S. Dep't of Interior, 228 F.3d 82, 85 (2d Cir. 2000).[10]  Once again, the court finds that the Director's decision is supported by both the law and the record and has a rational basis, particularly considering FSST's intent to use the land in compliance with current zoning regulations.

In sum, plaintiffs have failed to carry their burden under the APA.  The record establishes that the Director thoroughly reviewed FSST's application, responded to objections provided by the State, the County, and the School District.  The Director provided a thoughtful memoranda that separately discussed each regulatory factor while explaining her decision.  Accordingly,

---

[10] 25 C.F.R. § 1.4(a) states the general rule that trust land is not subject to local zoning regulations; however, this is limited by 25 C.F.R. § 1.4(b), which empowers the Secretary of the Interior, in her discretion, to hold trust land subject to local zoning regulations.  The Secretary exercises this discretion by placing a notice in the Federal Register.  See 30 Fed. Reg. 8722 (July 8, 1965) (invoking § 1.4(b) for tribal trust land located in California).  The court has found nothing to suggest that the Secretary has exercised such discretion as it applies to FSST.

the court finds that the Director's decision granting FSST's application was not arbitrary and capricious.  Thus, defendants are entitled to judgment as matter of law on this issue.

**B.      The Director's Impartiality**

Plaintiffs also contend that because the Director was biased against them, the Director's decision was arbitrary and capricious and subject to reversal.  "The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases."  <u>Marshall v. Jerrico, Inc.</u>, 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980).  The Department of Interior's review of an application to take land in trust is subject to the due process clause and must be unbiased.  <u>See Sokaogon Chippewa Cmty. (Mole Lake Band of Lake Superior Chippewa) v. Babbitt</u>, 929 F. Supp. 1165, 1176 (W.D. Wis. 1996).  "It requires a substantial showing of bias to disqualify a hearing officer in administrative proceedings or to justify a ruling that the hearing was unfair."  <u>United States ex rel. De Luca v. O'Rourke</u>, 213 F.2d 759, 765 (8th Cir. 1954).  "In the absence of clear evidence to the contrary, courts should presume that public officers have discharged their official duties properly."  <u>Sokaogon Chippewa Cmty.</u>, 929 F. Supp. at 1176.  Plaintiffs bear the heavy burden of establishing that the administrative hearing was unfair.  <u>See Cent. Ark. Auction Sale, Inc. v. Bergland</u>, 570 F.2d 724, 731 (8th Cir. 1978).

21

Plaintiffs contend that the Director, as an employee of the BIA, was biased due to the structural bias of the BIA in favor of Indians.  Plaintiffs point to BIA policies supporting Indian hiring preferences and tribal self-determination.  Based thereon, plaintiffs contends that all trust decisions are inherently biased in favor of the applicant.  As discussed in the court's previous order (Docket 39), plaintiffs failed to raise this argument during their administrative proceedings before the Director or the IBIA.  Accordingly, plaintiffs waived this objection to the Director's ruling.  See United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37, 73 S. Ct. 67, 69, 97 L. Ed. 54 (1952); Bhd. of Locomotive Eng'rs Int'l Union v. Union Pac. R.R., 134 F.3d 1325, 1331 (8th Cir. 1998).

Further, even if properly preserved, the court finds that plaintiffs' structural bias argument lacks merit.  The BIA's policies of tribal self-determination, Indian self-government, and hiring preference for Indians are policies established by Congress in the IRA.  See 25 U.S.C. § 465.  See also Morton v. Mancari, 417 U.S. 535, 542, 94 S. Ct. 2474, 2478, 41 L. Ed. 2d 290 (1974).  The United States Supreme Court has found the preference policy is reasonable and rationally designed to further Indian self-government and does not violate due process.  Morton, 417 U.S. at 555.  Following Congress's statutory policies does not establish structural bias warranting reversal of the Director's decision.  See Brooks v. N.H. Sup. Ct., 80 F.3d 633, 640 (1st Cir.

22

1996) ("[A]n entire group of adjudicators cannot be disqualified wholesale solely on the basis of an alleged institutional bias in favor of a rule or policy promulgated by that group.").

Additionally, plaintiffs contend that the Director was actually biased against their interest.  Plaintiffs first attempt to rely on evidence of the Director's activities outside this particular trust application and its corresponding litigation.  (Docket 33-1).  Once again, this evidence was not presented to either the Director or the IBIA and is waived for the reasons discussed above.

Finally, plaintiffs contend that the Director exhibited actual bias against plaintiffs in reviewing FSST's application.  (Docket 33-1).  Plaintiffs point out that the Director made two specific errors in her ruling—erroneously inflating the portion of the County's budget paid by FSST and erroneously stating that the School District would receive additional federal funding—and contend that the Director intentionally misconstrued the evidence against them.[11]

Essentially, plaintiffs contend that the Director's errors, all of which were corrected on appeal by the IBIA, establish actual bias.  Plaintiffs fail to

_____

[11] On appeal to the IBIA, plaintiffs' sole bias contention was that the Director's statement questioning the County's motivation for reclassifying the property's tax status exhibited bias.  Plaintiffs, however, seem to have abandoned this position, but even if not, the court finds that this statement, made in the Director's official ruling on the case and as part of her analysis of § 151.10(e), does not establish bias.  See NLRB v. Honaker Mills, 789 F.2d 262, 266 (4th Cir. 1986).

carry the burden required to overcome the presumption that the Director acted impartially.  For the most part, judges "are presumptively capable of overcoming [biasing] influences and rendering evenhanded justice; and only a strong, direct interest in the outcome of a case is sufficient to overcome that presumption of evenhandedness." Fero v. Kerby, 39 F.3d 1462, 1479 (10th Cir. 1994).  "'Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which [s]he has been the target of personal abuse or criticisms from the party before [her]." Id. (quoting Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d 712 (1975)). The mere fact that the Director made two erroneous findings is insufficient to overcome the presumption that Director was unbiased.  See NLRB v. Honaker Mills, 789 F.2d 262, 266 (4th Cir. 1986) (stating that erroneous evidentiary rulings could not establish bias because plaintiffs "must make a showing of bias stemming from sources outside the decisional process"); see also Haltmier v. Commodity Futures Trading Comm'n, 554 F.2d 556, 562 (2d Cir. 1977); Sanchez ex rel. Sanchez v. Barnhart, No. 03-C-537-C, 2005 WL 752220, at *10 (W.D. Wis. March 30, 2005).

Further, there is substantial evidence that the Director conducted the proceedings in a fair, unbiased manner.  The record establishes that the Director sought comments from the State, the County, the City, the Township, and the School District.  Additionally, the Director's decision letter explicitly

24

responded to objections raised by the State and the County.  AR 21.  Further, on two separate occasions, the Director requested, on her own accord, that the IBIA remand the case so that she could obtain and consider additional comments from the City, the Township, and the School District.  AR 22, 59. After carefully reviewing the administrative record, the court finds that plaintiffs' allegation of bias against the Director lacks merit.  Plaintiffs have failed to carry their burden under the APA of establishing that the Director's decision was arbitrary, capricious, or contrary to the law.  Defendants are entitled to judgment as a matter of law on the issue of bias.  Based on the foregoing discussion, the court grants judgment as matter of law to defendants on each issue presented.

Plaintiffs raised two additional causes of action in their complaint, namely that:  (1) Section 5 violates the Tenth Amendment of the U.S. Constitution; and (2) Section 5 violates the enclave clause of the U.S. Constitution.  (Docket 1).  Defendants contend that plaintiffs have abandoned these issues by their failure to raise the issues in their memorandum in support of summary judgment.  (Docket 53).  Plaintiffs did not dispute this contention in their reply memorandum.  (Docket 64-1).  The court-ordered deadline for filing motions for summary judgment was April 4, 2005.  Because plaintiffs did not raise these issues in their brief for summary judgment and did not refute defendants' contention that they abandoned the issues, and the

deadline for filing motions has passed, the court finds that plaintiffs have abandoned these issues.  See Jones v. United Parcel Serv., Inc., No. 03-0284-CV-W-GAF, 2005 WL 1009572, at *20 (W.D. Mo. April 7, 2005); Garton v. Nat'l Ass'n of Sec. Dealers, Inc., No. 90-1014-CV-W-1, 1991 WL 207409, at *3 n.4 (W.D. Mo. June 18, 1991); see also Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740 (8th Cir. 1985) ("A party's failure to raise or discuss an issue in [its] brief is to be deemed an abandonment of that issue."). Accordingly, it is hereby

ORDERED that plaintiffs' motion for summary judgment (Docket 41) is denied.

IT IS FURTHER ORDERED that defendants are entitled to summary judgment on the issues of whether § 5 of IRA is an unconstitutional delegation of legislative authority, whether the Director's decision was arbitrary and capricious under the APA, and whether the Director was biased.  Summary judgment in favor of defendants on all issues shall be entered.

Dated November 18, 2005.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE


26